## 27405. CITY OF ATLANTA *v.* PARKS.

DECIDED APRIL 19, 1939.

*J. C. Savage, C. S. Winn, Bond Almand, J. C. Murphy,* for plaintiff in error.

*Knight & Sunshine,* contra.

SUTTON, J.  Annie Parks, widow of Dan Parks, deceased, filed with the Industrial Board her claim for compensation against the City of Atlanta, because of the accidental death of Parks under circumstances hereinafter set forth.  The director rendered an award in her favor, and this was affirmed by the board.  On appeal the award was affirmed by the superior court, and the exception is to that judgment.  It is apparently conceded that the deceased met his death while in the course of his employment, and the sole issue here presented is whether or not his death arose *out of* his employment.  The undisputed facts are as follows:  Dan Parks was in the employ of the City of Atlanta as a day laborer.  On May 2, 1938, the day of his death, he was engaged in spraying a disinfectant in swamps and branches for the city, for the purpose of killing mosquitoes.  In the performance of his duties he wore on his back, supported by shoulder-straps, a four-gallon can made of galvanized iron.  While so engaged a drizzling rain began to fall.  Cliff Ellison, a fellow worker, was performing like service in a stream near by, until a bolt of lightning struck a tree about 450 feet from the place where he was working and in the direction where the deceased was working.  Ellison immediately left his work and returned to a city truck some distance away, and after the rain he went to join the deceased, and found him under a large tree, approximately 30 inches in diameter at the base and 85 to 90 feet in height.  The deceased was in a semi-standing position against the bank of a stream, with one foot in the water.  From all physical appearances the tree had been struck by a bolt of lightning at a point about 8 feet from the top, and the lightning had traveled down the tree to a point about 8 feet from its base, at which point it had left the tree under which the deceased's body

was found, had struck a smaller tree approximately 7 feet away, and had traveled down the smaller tree and entered the ground at the base of the smaller tree, making a hole 5 or 6 inches in diameter and about 18 inches in depth. In several places the body of the deceased showed signs of having been burned by lightning. About 150 feet from the scene of the accident was a clump of trees approximately as high as the tree under which the deceased was found, and the nearest house was about 130 feet distant.

While in respect to the tank used on the deceased's back there was testimony on behalf of the city that upon examination, after it had been in use several days following the death of Parks, it did not show any sign of having been struck by lightning, there was testimony on behalf of the claimant that at the time the spraying machine was loaded on the city wagon, shortly after the accident, there was what the witness regarded as a burned or hit place on the can. This witness testified that there was a burned hole in one boot of the deceased, but in this particular a witness for the city testified that he did not regard the hole as having been produced by lightning. Cliff Ellison, Parks' coworker, testified that Parks had been spraying with the machine, that the lightning burned the strap in two, and that the clothes of the deceased were damp from the rain. An expert witness testified for the claimant, that, under conditions producing lightning, the highest thing above ground is the object that is invariably struck by lightning; that in his scientific opinion Parks, being near the tree and wearing the spraying machine, was in an unusually hazardous place at the time of the lightning; that if a person is standing in water and is shocked by an electrical force he becomes grounded and completes the force of the electricity, the water acting as a ground; that in an electric shock, where an object is insulated, the result is usually the tearing apart or explosion of whatever is struck; that the energy must be absorbed or dissipated, and that if the force is not immediately or quickly conducted to the earth the result is usually one of destruction, tearing things up; that the force of the lightning was strong enough to cut a hole in Parks' boot; that, if that particular tree had not been there, it is a matter of speculation whether Parks would have been killed or struck by electricity because of the existence of the other trees near by, but from an analysis he would say that the high tree being in the path of the lightning was struck;

that had the tree not been there no striking would have resulted; that he would not testify positively to the fact, but it was his opinion that the tree existing and Parks wearing a spraying machine constituted a contributory and proximate cause of the deceased's death, the combination making, in his judgment, an unusual hazard. He also testified that he would consider the tree under which the deceased was found (the witness having visited the scene) a conductor of electricity, either when dry or wet, but more so when wet, and that the preponderance of evidence supports the theory that metals do attract lightning, and that water is a conductor of electricity.

The director found that, although in his opinion the metal spraying machine did not increase the hazard, the other facts of the case showed that the deceased, by reason of his employment, was subjected to a hazard not shared by the community, and that his death arose out of and in the course of his employment; and he awarded compensation to the claimant. The board affirmed the award, finding that the metal machine did increase the hazard, because it was conclusively shown that the lightning left the tree at a point approximately 8 feet from the ground, struck the employee, and then jumped to a smaller tree. The plaintiff in error contends that the duties of the employee did not require him to be under the tree, and that in fact he was not exposed to any danger not equally shared by the community; that the tree was not a contributing or extra hazard; that his death resulted solely from being in close proximity to a place where the lightning struck the ground, the metal spraying machine not shown to have been struck and not having conducted the lightning to the body of the employee; in short, that it could not be said that his death arose out of his employment, because the deceased was not exposed to any greater hazard than the community.

No exactly similar case has been before the appellate courts of this State. In lightning cases the rule is stated in 1 Schneider's Workmen's Compensation Law, 1141, as follows: "When the workman, by reason of his employment, is more exposed to injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment; when, however, it appears that nothing in the nature of the employment has exposed him to any more danger than that shared

in common by the general community, the accident does not arise out of the employment and is not compensable. Each case must therefore be considered on its own facts, but the standard for testing those facts is always the same, to wit: Did the employment increase the danger?" In 71 C. J. 758, § 473, it is stated: "Harm resulting from lightning may be compensable as an injury arising out of and in the course of the employment, where the injured employee is by reason of his employment peculiarly exposed to risk of injury from this source; but where the employment does not expose an employee to the risk of injury from lightning in a greater degree than usual, harm resulting from being struck by lightning may not be compensable." In Madura v. New York, 238 N. Y. 214 (144 N. E. 505), it was said: "It is a matter of widespread scientific belief and declaration that a wet tree is a ready conductor of a current of electricity, and that a person standing under such a tree is exposed to a degree of danger which does not confront one in the open spaces of a highway or field. . . This scientific belief is so widespread that we think the Industrial Board had the right to take notice of it, without testimony, in deciding that this accident was the result of a special risk incidental to the employment of the decedent." In that case the employee of the City of New York was at work on the Bronx Parkway. A thunderstorm arising, he was directed by his foreman to remain until after the storm in order to perform various duties. In standing under a tree where he had gone for shelter he was struck by lightning and killed. The award in favor of the claimant, wife of the deceased, was affirmed. In State v. District Court, 129 Minn. 502 (153 N. W. 119, L. R. A. 1916A, 344), the employee was a driver of an ice wagon. "On the morning of September 1, 1914, during a severe rainstorm, accompanied by lightning, the deceased was on his usual route. He left his team in the street and went towards a large elm tree standing just within the lot line, either for protection from the storm, or on his way to solicit orders. There was an iron fence along the lot. Just as he reached the iron fence, lightning struck the tree and struck him, and he was killed, his body falling upon the fence." The court held: "If the deceased was exposed to injury from lightning by reason of his employment, something more than the normal risk to which all are subject, if his employment necessarily accentuated the natural hazard from lightning,

and the accident was natural to the employment, though unexpected or unusual, then a finding is sustained that the accident from lightning was one 'arising out of employment.' An injury, to come within the compensation act, need not be an anticipated one; nor, in general, need it be one peculiar to the particular employment in which he is engaged at the time."

In *Globe Indemnity Co.* v. *MacKendree,* 39 *Ga. App.* 58 (146 S. E. 46), affirmed by the Supreme Court on certiorari (169 *Ga.* 510, 150 S. E. 849), the employee was killed from the force of a storm operating upon a tree, instead of lightning; but we think the principle there announced is applicable to the facts of the present case. "On July 21, 1927, the employee, in accordance with his custom and with the full knowledge, consent and approval of his employer, drove to Eloree in an automobile owned by his employer for the purpose of transacting the business of his employer with the agent at that place. After completing such business and in the afternoon of the same day, he 'started on his return trip to make his usual report and accounting to his employer. But while proceeding in said automobile along a public State highway at a lawful speed and in a prudent and careful manner, a sudden storm overtook him while passing through a piece of woodland, and a tree was blown down by the wind across the automobile, crushing his head and producing almost instant death.'" The court said: "Whether an injury would be compensable if occasioned by a storm, without other contributing cause, is not a question in this case. Nor do we find in the so-called 'lightning cases' any logical precedent for a decision against compensation in the case at bar. Even in that class of cases the employer may be liable, where the employee was subjected to a greater danger from lightning by reason of his employment. MacKendree was not killed solely by a storm, but by the force of a storm operating upon a tree which stood by the wayside. Trees do occasionally fall, and perhaps every tree must fall at some time. The particular tree stood upon the route which MacKendree was accustomed to take in the regular discharge of his duties, and his employment exposed him to such danger as might exist from the falling of this or any other tree standing along the route so traveled by him. The risk was not one which was common to all mankind, or to which the public at large was equally exposed. 'Where the duties of the employee entail his

presence or travel upon the highway, the claim for an injury there occurring is not to be barred because it results from a risk common to all others upon the highway under like conditions, unless it is also common to the general public without regard to such conditions, and independently of place, employment, or pursuit. [See 28 R. C. L. 804, § 93; Katz v. State Industrial Commission, 232 N. Y. 420, 134 N. E. 330, 23 A. L. R. 401; Dennis v. White (England), 1917 A. C. 479, 15 N. C. C. A. 294].' It is not necessary in a case of this sort that the particular occurrence should have been foreseen or expected, but it is sufficient if after it has happened it 'appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' In re McNicol, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306). . . Under the agreed statement it must be held that the injury and death of MacKendree arose out of his employment within the meaning of the compensation act, and we accordingly affirm the judgment." Analogizing that case to the present one, suppose, first, that the tree, upon being struck by lightning, had fallen upon and killed Parks. Assuredly the *MacKendree* case would be authority for holding that the death of Parks would be compensable. What difference, then, is there in principle between that situation and one in which the tree, instead of falling upon the employee, conducted the force of electricity to the body of the employee? In either case the wet tree became an agency of destruction, and the employee was subjected by his employment to a hazard not shared equally by the community.

We think that under the law and the facts the award in favor of the claimant was authorized, and that the superior court properly affirmed the same. The evidence showed that it is the unvarying characteristic of lightning to strike the highest object in a given area; that in the present case it struck the wet tree under which the deceased was found, which was the tallest tree in his immediate vicinity; that the clothes of the deceased were wet from the rain; that water and metal are efficient conductors of electricity; that the lightning, instead of proceeding entirely down the wet tall tree into the ground at its base, left the tree at a point about 8 feet from the bottom, struck a smaller tree a few feet away, and made a hole in the ground near its base. During its course the lightning

obviously struck the employee. It is immaterial whether or not the metal spraying machine was itself struck. The uncontradicted evidence was to the effect that metal does attract electricity. Under the circumstances it could reasonably be said that the lightning did not continue along the wet tree to the ground because the metal sprayer constituted an added attraction. Certainly it could not be said as a matter of law that the board could not so find. It is urged by counsel for the plaintiff in error that the wet tree was not an extra hazard, because, it is contended, such trees are generally prevalent, and people build houses and make their abodes near them, and are exposed as was the employee here. But while houses may be intentionally built near trees, or trees may be planted near houses, the populace, when lightning breaks, are afforded the opportunity of withstanding its effect by indoor protection, a refuge indisputably safer than in the open or under a tall wet tree. The conclusion is not demanded, as the plaintiff in error contends, that the death of Parks resulted solely from lightning striking the ground near which he happened to be, and independently of any other contributing cause. The evidence shows that he was where his duties required him to be, and authorizes a finding that he was exposed, by reason of his employment, to a hazard not equally shared by the community. Consequently the judge of the superior court did not err in affirming the award in favor of the claimant. It may be added that the contention of the plaintiff in error that the claimant is not entitled to recover, inasmuch as the lightning was an act of God, is without merit. True, the original force was an act of God; but it is clear from the authorities that where the employee is exposed to a danger which is not commonly shared by the community, as in the present case, the injury or death may be said to have arisen out of the employment, and is compensable. In the *MacKendree* case, supra, clearly the storm which caused a tree to fall upon the employee was an act of God; but inasmuch as it was held that he was exposed to an extra hazard, his death was said to have arisen out of his employment, and the judgment of the superior court in affirming an award by the Industrial Board (then the Industrial Commission) in favor of the claimant was upheld.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*