## 27521. HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* COX *et al.*

DECIDED NOVEMBER 3, 1939.  REHEARING DENIED DECEMBER 18, 1939.

*Wheeler & Kenyon,* for plaintiffs in error.

*Joseph H. Blackshear,* contra.

*R. W. Smith Jr.,* for persons at interest.

GUERRY, J.  This is a workman's compensation case.  On the morning of April 6, 1936, a terrible tornado visited Gainesville,

Georgia, and cut a swath nearly a half mile wide through the town, killing 200 people and injuring nearly 1000. It destroyed or injured beyond repair 85 brick stores and factories, heavily damaged 53 stores, and slightly damaged 116 others. Approximately 320 frame buildings were injured beyond repair, 110 were heavily damaged, and 309 were slightly damaged. Among the buildings destroyed was the Hall County court-house, a solid brick structure. In 1880 a windstorm or tornado visited Gainesville, and again, in 1903, a tornado killed approximately 100 people. A slighter windstorm did considerable damage in 1935. On this morning Mrs. Stanton Cox was employed by the Gallant-Belk Company, and was at her post of duty in a store building located on the east side of the public square in Gainesville. The Gallant-Belk Company was subject to the provisions of the workmen's compensation act. This store building was a two-story, brick structure, 22 feet wide and 145 feet long, with walls 14 inches thick. The front part of this building, for 50 or more feet back, was demolished by the tornado, including a portion of the front wall, down to the level of the first floor. The side wall for 50 feet also collapsed. Mrs. Cox was killed during the tornado. Claim was made by her dependents for compensation. Compensation was awarded by the sole commissioner; his finding was approved by the full board, and this finding was approved by the superior court. The question presented is whether the death was sustained by Mrs. Cox out of and in the course of her employment.

The opinion and award written by Director Stanley is an unusually fine discussion of the workmen's compensation law in reference to the definitions of an accident and to the much discussed and variously decided terms in reference to injuries "which arise" "out of" and "in the course of" employment. We concur with the director's opinion that "any injury caused by the elements is necessarily an accident within the definition of that term." We also concur in his quotation from Bryant v. Bissell, 84 N. J. L. 72 (86 Atl. 458) : "To warrant a recovery it must appear that (a) there was an accident, (b) arising out of, and (c) in the course of the employment." Judge Bell in *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (118 S. E. 786), first defined and decided these principles of the law as applied to the Georgia statute when he said: "An injury arises 'in the course of employment,' within

the meaning of the workmen's compensation act, when it occurs within the period of the employment; at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto." He further said, "An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing proximate cause. This and the condition stated above must concur before the act can apply." As was said in *Maryland Casualty Co.* v. *Peek,* 36 *Ga. App.* 557, 559 (137 S. E. 121), "The terms 'in the course of' and 'out of' are not synonymous. Both must concur to render the case a compensable one."

We may say in the present case that there was an accident and injury which arose in the course of the employment. The facts are undisputed. Did these facts warrant the conclusion of law as drawn therefrom so as to authorize a finding that the injury arose "out of" the employment? In the *Peek* case, supra, the rule as laid down by the text-book writers on this subject has been adopted in this State as follows: "There must be a causal connection between the employment and the injury, and the injury must be the *rational* consequence of some *hazard connected with the employment.*" (Italics ours.) The danger to which the employee is exposed may originate either from the employment or outside of it, *if the exposure is peculiar to it.* Corpus Juris, Workmen's Compensation Acts, 74, § 65. "It is not enough to say that the accident would not have happened if the servant had not been engaged in the work at the time, or had not been at that place. It must appear that it resulted from something he was doing in the course of his work, or from some peculiar danger to which his work exposed him." 1 Honnold's Workmen's Compensation Law, 320, § 101; 1 Schneider's Workmen's Compensation Law, 737, § 262. With this construction and definition we may say that the rule as stated above is in accord with all the authorities almost without exception. Its application to particular facts seems to have given rise to a diversity of results.

The injury in the present case was the result of the forces of nature, or "the elements," or "an act of God." 1 Honnold's Workmen's Compensation Law, 428, § 119, says in reference to injuries caused by "the forces of nature": "But where the work and the method of doing the work expose the employee to the forces of

nature to a greater extent than he would be if not so engaged, the industry increases the danger from such forces and the employer is liable." 1 Schneider's Workmen's Compensation Law, 1141, said: "When the workman by reason of his employment is more exposed to injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment; whenever it appears that nothing in the nature of the employment has exposed him to any more danger than that shared in common by the general community, the accident does not arise out of the employment and is not compensable." The question for determination under each state of facts presented is, "Did the employment increase the danger?" 71 C. J. 757, § 470, says: "Injuries sustained by employees as a result of windstorms or tornadoes are not ordinarily compensable where such employees are not, as such, exposed to the risk of such harm to a greater degree than the public generally in the same vicinity, but compensation may be had where the injured employee is by reason of his employment specially exposed to injury from such causes." McNicol's case, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306), is possibly the leading case in stating this principle, and what is there said is in consonance with the *Peek* case from this court and the texts cited above. There are countless opinions attempting to apply these principles to the particular facts for decision, and we are not able to make all the distinctions that seem to be drawn from the particular facts under consideration in each special case. In Walker *v.* Wilkins, 212 N. C. 627 (194 S. E. 89), it was held that an injury to an employee when a tornado suddenly demolished the building in which he was at work was not compensable as an accident which arose out of and in the course of his employment, since there was no causal connection between the employment and the accident. The facts in the Walker case, supra, were that about 7:12 p. m. on April 2, 1936, when Charlie Walker was at work in the plant of his employer, J. D. Wilkins Inc., located on West Lee Street, in Greensboro, North Carolina, a tornado suddenly and with terrific force struck the plant and partially demolished it; that it lasted not exceeding five minutes, and caused damage to many buildings which were located in the vicinity of the building where Walker was injured; that many persons who were in the path of the tornado were injured and several died as a result of the injuries; and that there

was nothing to show any inherent weakness in the building destroyed.

In a great many cases compensation has been awarded because the workman was engaged in doing something in connection with his employment at the time of the injury which contributed to such injury, as where the building collapsed while he was attempting to close the windows which was a part of his duties. Reid v. Automatic Electric Washer Co., 189 Iowa, 964 (179 N. W. 323). In Central Ill. Public Service Co. v. Industrial Com., 291 Ill. 256 (126 N. E. 144, 13 A. L. R. 967), an employee was killed, by reason of a cyclone, while working in a plant where ammonia fumes and scalding steam contributed to his injuries, and it was held his death was compensable. It was said: "While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment. . . Deceased at the time the storm broke was engaged in assisting and directing the closing up of the plant. . . These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes should the building be destroyed by storm." These fumes contributed largely to his death. These principles are well established and each case is dependent upon its particular facts.

Claimant here contends that Gainesville was in a cyclone area, and the fact that the building collapsed because of the storm shows that the risk of one employed in such a building was an unusual and particular risk in view of the fact that other buildings differently constructed did not fall. We can not subscribe to the contention that, because of the fact that Gainesville had in times past been visited with tornadoes, employees in such an area became subjected to a peculiar risk because of their employment within such an area, and that any damage sustained was therefore compensable. Neither does it appear from the evidence in this case that there was any inherent weakness in the building in which the deceased was employed, which caused the collapse and made the

construction of the building an incident of the risk. The building was a brick building; 85 other brick buildings in that area were also demolished. The fact that one building is destroyed by a tornado and another beside it is not demolished, in view of the testimony as to the kind and nature of the damage resulting from the storm, is not necessarily evidence that there was any peculiar risk to employees in this building that was not general and common to other employees in other buildings in the path of the tornado. There was no evidence of any inherent weakness in the building destroyed. The case of *Globe Indemnity Co.* v. *MacKendree,* 39 *Ga. App.* 58 (146 S. E. 46), is chiefly relied upon as supporting the finding made in this case. In that case in referring to injuries by lightning it was said: "Even in that class of cases the employer may be liable, where the employee was subjected to a greater danger from lightning by reason of his employment." See in this connection *City of Atlanta* v. *Parks,* 60 *Ga. App.* 16 (2 S. E. 2d, 718).

In the *MacKendree* case the same distinction was drawn as was in the case of the man closing the windows (Reid *v.* Automatic Electric Washer Co., supra) and in the case where the steam and ammonia fumes contributed to his death (Central Ill. Public Service Co. *v.* Industrial Com., supra). "If after it happened it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence" we may say that it is compensable. Under the facts of the *MacKendree* case it was held that the risk was not common, but was peculiar to the employment. So far as shown by the agreed statement of facts in the present case the deceased met her death because of the fury of the tornado. Death was very common and very close to a large number of citizens of Gainesville that day. 66 workers were killed in business establishments and 85 brick stores and factories were injured beyond repair. Death to Mrs. Cox did not result, according to the evidence, from any risk or danger peculiar to her employment. So far as appears from the evidence there was nothing to cause her death except the fury of the storm which destroyed the building where she was at work. The risk she ran was a risk common to all within the affected area. There appears no causal relation between the employment and the injury. There is nothing to show that her location in that particular building subjected her to more danger than other citizens in that area who were in the

path of the storm so that it may be said that her exposure was peculiar to her employment. Scores of others similarly situated in other buildings also were killed and hundreds injured.

We agree with the director that the tendency is to liberalize and humanize the construction of this statute. We agree with this tendency. We do not think, however, such a tendency can permit a construction which will override the plain language of the statute and the well-established principles fixed by an almost unbroken line of precedents from other States and accurately stated in the decisions of this court. The facts in this case are agreed upon by the parties. The conclusions drawn from these facts are conclusions of law. We do not think the conclusions drawn are sound; and the court erred in sustaining the award.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*