28231. MARYLAND CASUALTY COMPANY *et al.* v. LILLY.

DECIDED JULY 9, 1940.

*Haas, Gambrell & Gardner, William P. Whelchel,* for plaintiff in error.

*G. Fred Kelley,* contra.

MacINTYRE, J. Mrs. Emmett Lilly, widow of Emmett Lilly, filed her claim with the Industrial Board against Pruitt-Barrett Hardware Company and the Maryland Casualty Company, insurer,

for the death of her husband alleged to have arisen out of and in the course of the employment. It was agreed that her husband was an employee of the Pruitt-Barrett Hardware Company and was such employee on April 6, 1936; that his death arose *in the course of his employment* with said hardware company in the place of business of his employer. The director found for the claimant. The board affirmed the finding of the director, but reduced the amount of compensation awarded. The judge of the superior court affirmed the award of the board, and the defendants excepted.

On the morning of April 6, 1936, at approximately 8:30 a. m., the City of Gainesville was visited by a tornado which in two minutes demolished or damaged brick buildings and frame buildings, including factories, stores, public buildings, and residences in its path through the city from the southwest side to the northeast side. Approximately two hundred people were killed, and approximately one thousand injured. Many brick business buildings in the vicinity of the Pruitt-Barrett Hardware Company were destroyed by the force of the wind and the severity of the tornado. The defendant's building collapsed, crushing the claimant's husband and five other employees to death. The Hall County courthouse, a brick structure, was partially demolished, and a large bell in its tower was blown approximately one city block; yet no one in the court-house was killed. The defendants contend that there is no evidence showing that the deceased's death arose out of the employment, that his death was the result of an act of God (a tornado) and that there can be no recovery of compensation.

It seems to be the general rule in cases of this character that the employer can not ordinarily be held liable to pay compensation for injury caused by forces of nature which he can not reasonably foresee and guard against, where the employee is no more subject to injury from such forces than others; but that the employer is liable where the work or method of doing it exposes the employee to the forces of nature to a greater extent than he would be exposed if not so engaged, or rather to a greater extent than others in the community are exposed. 1 Honnold on Workmen's Compensation, 119, § 117; 71 C. J. 757, § 470; Alzina Construction Co. *v.* Industrial Com., 309 Ill. 395 (141 N. E. 191); *Hartford Accident & Indemnity Co.* v. *Cox,* 61 *Ga. App.* 420 (6 S. E. 2d,

189, 191). A tornado is one of the forces of nature which man can not foresee and prevent, and an employee is ordinarily no more subject to injury from such source than are others (Slanina v. Industrial Com., 117 Ohio, 329 (158 N. E. 829) ; and in order to recover compensation for injury or death therefrom, *the employee must have been exposed to it in a greater degree than other persons by reason of his employment.* This court in the *Cox* case, supra, quoted with approval the following rule: "Injuries sustained by employees as a result of windstorms or tornadoes are not ordinarily compensable where such employees are not, as such, exposed to the risk of such harm to a greater degree than the public generally in the same vicinity, but compensation may be had where the injured employee is by reason of his employment specially exposed to injury from such causes." 71 C. J. 757, § 470. In other words, in cases of this character, "the test is not whether the injury was caused by an act of God, but is whether the one injured was by his employment specially endangered by the act of God, be it lightning [tornado] or windstorm." Mobile & Ohio R. Co. v. Industrial Commission (Ill.), 28 Fed. 2d, 228, 231. Let us then consider to what degree the deceased employee in the instant case was exposed to the tornado in question, and whether he was by his employment specially endangered by the act of God (the tornado).

The board was authorized to find from the evidence that the Pruitt-Barrett Hardware Company building was a four-story brick structure. It had originally been a one-story brick structure, and approximately twenty to twenty-five years before the time of the tornado and accident, three stories were added to the building. When these stories were added, the walls and foundation of the building were not strengthened. There was an elevator in the building, which caused the building to vibrate when the elevator was in use. All four stories of the building were used in the business, and there was a heavy load of stock on each floor. The building was dangerously overloaded. It might be noted that E. P. Ledford, a contractor, gave the following answers to the following questions: "Q. Did the load that you say you observed in that building and the type building it was, increase the hazard of those who were on the first floor in the time [kind?] of storm such as we had? A. I would have felt that way. It would have been the last place I would want to [be] in case of a storm. Q.

In that building, it having been loaded as heavily as it was, would their chance of being killed on the first floor been increased or would it have remained the same? A. Well, I would think their chance would be increased, the way I think about it. Q. Do the better constructed buildings or not stand a better chance to withstand a tornado than one not properly constructed and overloaded? A. From my observation, Colonel, I know concrete and stucco structures stood this storm better than any other buildings in town; did less damage to those than any." E. L. Prater, a contractor and builder who put the third and fourth stories on the building in question, gave the following answers to the following questions: "Q. I will ask you this question: For the floor space of the upper stories of that building, about what weight per square foot of floor space should that building have carried to be safe? A. About sixty pounds per square foot. Q. Were you acquainted in a general way of the stock that was carried on the upper stories in the Pruitt-Barrett Hardware Company? A. Yes, sir. Q. State whether or not according to your estimation and observation of it, that the weight in there would have exceeded sixty pounds to the square foot. A. It was overloaded every time I had ever seen it. Q. Have you ever been in the upper stories of the building when the elevator was being operated? A. I installed the elevator and have been up there several times. That is where I got my hardware for the farm. Q. What effect did the use of the elevator have on the building; causing it to vibrate when the elevator was being operated? A. Well, the only vibration could be caused by it is where the upright posts join the floor joists, the weight of the elevator was on a foundation independent of that. Q. State whether or not you could feel the vibration in the building whenever the elevator was being operated? A. When it was loaded you could. Q. State whether or not you have ever experienced a vibration from the use of trucks on the upper stories of the building, trucking stuff across the floors. A. I don't recall I have seen any trucks on the floor up there. I told Guy Barrett on several occasions when I was up there if they didn't shift that load next to the wall or around the column he would break that floor in. Some of the flooring deflected as much as two and a half inches with the weight."

The injury to Lilly was not caused by the direct force of the

wind or tornado upon his person. His injury and death were caused by the force of the tornado operating upon the building in which he was required to work, which building was of inferior construction, overloaded, and weakened, and increased the hazard of accident by storm and contributed to it, and which collapsed as the result of the force of the storm operating upon it. That the collapse of the building was caused by an act of God does not preclude a recovery, but only brings the case within the range of the rule that there may be compensation when the industry combines with the elements (tornado) in producing the injury. The fact-finding body were authorized to find from the evidence that the building in which the employee was required to work was so defectively constructed and so overloaded with heavy materials as to constitute a hazard to the employee required to work therein, and consequently a hazard of industry, and this exposure to danger of the employee in this building that was not common to employees not in this building existed whether there had been a tornado or not; and therefore the fact-finding body were authorized to find that there had been a concurrence and a combination of the violence of nature with the ordinary hazard of industry to produce the death of the claimant's husband. To state it differently, the special and peculiar dangers existed on account of the unsafety of the building, and the two together became so intermingled that they were the combined and concurrent causes of the death of the claimant's husband. Industrial Commission of Ohio v. Hampton, 123 Ohio, 500 (176 N. E. 74). It is true that other buildings were demolished by the storm, and that still other buildings withstood the force of the storm in whole or in part; but this does not alter the fact that the deceased, by his employment, was required to work in a building which by its structure, overloading, and weakened condition presented certain hazards of industry (this was not true in the Cox case) which combined with the operation of the forces of nature to cause the death. There was a causal connection between the employment and the death. In other words, the deceased was, by his employment, specially endangered by the act of God and was exposed to it in a greater degree than other persons in the community were exposed. Globe Indemnity Co. v. MacKendree, 39 Ga. App. 58, 60 (146 S. E. 46).

The plaintiff in error contends that the instant case is controlled

by the *Cox* case, supra. It is differentiated in that in the *Cox* case there was nothing to show that a danger or hazard existed to the employee before the tornado, on account of the particular building in which he was required to work, by reason of its defective construction which weakened and made it an unsafe place in which to work. In that decision Judge Guerry three times called attention to the fact that "there was no evidence of any inherent weakness in the building destroyed," and on one of these occasions, where he was calling attention to the lack of evidence of any inherent weakness, he said: "The fact that one building is destroyed by a tornado and another beside it is not demolished, in view of the testimony as to the kind and nature of the damage resulting from the storm, is not *necessarily* evidence that there was any peculiar risk to employees in this building that was not general and common to other employees in other buildings in the path of the tornado. There was no evidence of any inherent weakness in the building destroyed." (Italics ours.) We think this in effect intimated that if the evidence had shown an inherent weakness in the building destroyed, to such an extent as to expose the employee to peculiar or increased danger from a tornado, the employee might have come within the part of the rule laid down in 71 C. J. 757, and quoted with approval in the *Cox* case, that "compensation may be had where the injured employee is by reason of his employment specially exposed to injury from such causes" (windstorms and tornadoes). Thus the distinction is that in the *Cox* case the evidence only showed that the tornado caused the collapse of the building in which the deceased was working in the course of his employment, and he was then and there killed; whereas in the instant case there was an inherent weakness in the building which, when attacked by the force of a tornado, specially endangered the life of the employee. This decision does not rest upon the negligence in defectively constructing and overloading the building, but upon the causal connection between the injury of the deceased and the conditions under which he was required to work. L. R. A. 1916A, 308. His death arose out of and in the course of the employment. The judge of the superior court did not err in affirming the award of the director as modified by the board.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*